UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AMER SULIEMAN

        Plaintiff,                                    Case No.:

  -against-

JEBARA IGBARA, MOTASHEM R. KHALIL, and    **COMPLAINT**
JOUMANA DANOUN.                                **& JURY DEMAND**

        Defendant.
-------------------------------------------------------------------X

**COMES NOW,** Plaintiff AMER SULIEMAN ("Mr. Sulieman" or the "Plaintiff") by and through his undersigned counsel, J. Iandolo Law, PC with offices located at 7621 13th Avenue, Brooklyn, New York 11228, for his Complaint alleges upon information and belief:

## I.    PRELIMINARY STATEMENT

1. Defendant, Jebara Igbara (hereinafter referred to as "Jebara" or "jaymancini") has concocted a scheme to defraud individuals by fraudulently inducing individuals via a fraudulent internet persona as well as utilizing others to further his scheme. Jebara's fraudulent internet persona known as "#jaymanci" (jaymancini) depicts Jebara as a successful businessman, driving expensive cars, wearing watches, hanging with celebrities, and giving away cash and expensive items. However, the depiction is nothing more than a tool to misguide the innocent, so that Jebara could pray on the inncocent to further his own personal financial agenda.

2. Jebara has utilized his internet persona, jaymancini, along with his family ties when he procured substantial monies from Mr. Sulieman; specifically, $290,000 in cash (the "Loan"). In addition to the monies procured from Plaintiff, Mr. Suleiman, Jebara has also fraudulently

procured monies from Mr. Sulieman's other family members, close friends, and even strangers to finance his luxurious life.

3. Jebara with assistance from his now wife, Defendant Joumana Danoun ("Danoun") often promoted fraudulent raffles, giveaways, lotteries, and other gimmicks to procure monies over the internet, via different social media platforms.

4. Prior to the Loan, Jebara entered into an investment contract with one of Mr. Sulieman's business entities, promising a certain rate of return over a prescribed one-year period. Immediately before any earned interest was paid; premised on Jebara's timely payments and the parties family history, Jebara sought additional monies from Mr. Sulieman, which is the premise of the herein action

5. In furtherance of their scheme, Jebara along with Danoun contacted Mr. Sulieman in the late hours of the night, seeking a certain amount of cash. In the hours thereafter, at about 1:40 a.m. on August 30, 2019 the couple met Mr. Sulieman at his home, on Staten Island seeking the funds of the Loan.

6. Upon arrival, Jebara entered the home, and once he knew that Mr. Sulieman had more money than originally requested, Jebara requested more, which Mr. Sulieman reluctantly agreed to advance.

7. Jebara stated that although he had the funds in his own account, they could not be accessed for another few days. More importantly that Jebara needed the monies immediately, as Jebara needed to pay for a certain real estate transaction.

8. To further induce Mr. Sulieman, Jebara furnished Mr. Sulieman with three checks, in the amount of $240,000; $128,500; and $15,000, said monies represented monies owed to Mr. Sulieman along with return of the monies loaned on August 30, 2019.

9. That Mr. Sulieman was advised by Jebara that the checks could be immediately deposited. With that, Mr. Sulieman deposited the check the following morning. Immediately subsequent the deposit, Mr. Sulieman was contacted by Jebara requesting why he moved so quickly. Only one of the three checks cashed, the $15,000 check.

10. That the following day, Jebara arrived at Mr. Sulieman's place of business, with a convoy, including but not limited to three Mercedes Benz G-Wagons worth an estimated $600,000, two of the vehicles were driven by what Jebara described as bodyguards.

11. It is upon information and belief that Jebara's visit to Mr. Sulieman's place of business was for the sole purpose of intimidation, nothing more.

12. Within days of the deposit, Mr. Sulieman received insufficient funds notices, he immediately contacted Jebara whom informed him that he would make payment on the bounced checks, by drafting new checks once the funds became available.

13. Jebara continuously assured Mr. Sulieman that he was going to be repaid, as he would often send screenshots of monies in his account, showing that Jebara had access to nearly $500,000.

14. That on September 11, at 3:34 am Jebara sent a text stating that a wire was sent to Mr. Sulieman and that the monies would soon be available –however, the monies never became were never wired; thus, were never available in Mr. Sulieman's account.

15. That Jebara had one of his cohorts, Defendant Motasem R. Kahill ("Kahill") draft a check, in the amount of $118,500, from a Wells Fargo Account on September 25, 2020, which also was retuned for insufficient funds.

16. Defendants utilized Jebara's internet persona in a way to mislead the public, including but not limited to Mr. Sulieman so that Defendants could live a luxurious lifestyle.

17. At the time the Defendants procured the monies, Jebara and other Defendants, knew the monies loaned were for the purpose of renewing inventory in Mr. Sulieman's business, and without said monies, there would be substantial economic injury sustained, which there was.

## II. JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the action involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District, and a substantial part of property that is the subject of the action is situated in this District.

## III. PARTIES

20. Plaintiff, Amer Sulieman, is a New York resident, whom Jebara approached, in Staten Island New York, for a loan in the amount of $290,000 premised on misleading and fraudulent statements.

21. Defendant, Jebara Igbara ("Jebara" or "Defendant") is a resident of the State of New Jersey; specifically, 69 Main Street 806 Fort Lee New Jersey, 07027.

22. Defendant, Joumana Danoun ("Danoun" or "Defendant") is a resident of the State of New Jersey; specifically, 69 Main Street 806 Fort Lee New Jersey, 07027.

23. Defendant, Motashem R. Khalil. ("Khalil") is a resident of the State of New Jersey; specifically, 6208 Jackson Street, Apt 3A West New York, New Jersey.

## CAUSES OF ACTION

### COUNT 1
### *FRAUDULENT INDUCMENT*

### *(Against Jebara and Danoun)*

24. Paragraphs 1 to 23 are incorporated as if fully set forth herein. Plaintiffs repeats and re-alleges the allegations of the complaint as if set forth in full herein.

25. Defendant, Jebara knew at the time he communicated material facts about his business dealings, including but not limited to the purchase of certain real estate, Plaintiff's would rely on said misrepresentations to his detriment.

26. But for Jebara's misleading, and false statements regarding his business connections, dealings, opportunities, Mr. Sulieman would not have loaned him money, and expected payment as described.

27. Plaintiff's reliance was justifiable, as Jebara portrayed an internet persona, which included inter alia posting pictures of stacks of money, fancy cars, and interactions with the rich and famous.

28. Jebara utilized the aforesaid fraudulent persona, his past business relationship, and his family ties to induce Mr. Sulieman to advance him a cash loan of $290,000, which Jebara never intended to pay back.

29. Jebara utilized the aforesaid fraudulent persona to induce Mr. Sulieman to make the Loan.

30. Jebara utilized previous business dealings, to induce Mr. Sulieman to make the Loan.

31. But for Jebara's fraudulent and deceptive practices, Mr. Sulieman would not have advanced Jebara monies, which clearly were not utilized for the intended purposes, as there was no real estate transaction which occurred on Sunday August 31, 2020, of which was the purpose of the Loan proceeds.

32. Additionally, Jebara did not have the requisite funds to cover the checks written on August 30,

2020, as stated contemporaneous with the granting of the Loan.

33. But for Jebara's fraudulent and deceptive practices, Mr. Sulieman would not have loaned 290,000 to Jebara.

## COUNT II

## FRAUD

### *(Against All Defendants)*

34. Paragraphs 1 to 33 are incorporated as if fully set forth herein.  Plaintiffs repeats and re-alleges the allegations of the complaint as if set forth in full herein.

35. Defendants, Jebara, Danoun, and Khalil made material misrepresentations of facts, which were known to be false at the time they were made.

36. Defendants knew at the time of the drafting of the checks that the monies was not in the account, and would not be at the time of presentment.

37. Defendants knew that the monies was not going to be utilized for a real estate deal, in the immediate future, which could not have waited until his own funds were accessible.

38. That Jebara stated that repayment of all monies would have occurred within 48 hours of the Loan; however, the Loan was not paid back on the terms and Jebara continued the fraud when he made further representations that he had the money to repay the loan, drafted a second check to Mr. Sulieman drafted on Khalil's account, and subsequently stated that a wire was sent.

39. That Jebara made the aforesaid representations, knowing that it would entice Plaintiff to enter into an agreement with Mr Sulieman and once it was not timely paid it would cease him from pursuing legal action.

40. At all times relevant, it was Defendants modus operandi to induce Plaintiff's to enter into a Loan agreement with Mr. Sulieman, of which Defendants never had the intentions of remitting payment for.

41. It was reasonable for Plaintiff to rely on Defendants misrepresentations.

42. Plaintiff was injured due to Defendants fraudulent conduct.

## COUNT III
### *Breach of Contract*
### *(Against Jebara)*

43. Paragraphs 1 to 42 are incorporated as if fully set forth herein. Plaintiffs repeats and re-alleges the allegations of the complaint as if set forth in full herein.

44. Jebara sought monies from Mr. Sulieman of which he promised to repay within a proscribed period of time.

45. Despite Defendant Jebara's failure to fulfil his obligations to make payments pursuant to the oral Agreement, Mr. Sulieman performed all of his obligations.

46. Thereafter, Defendant, Jebara made multiple representations that said monies would be repaid, via text messages.

47. Plaintiff, Sulieman has made multiple demands to have the monies returned.

48. Defendant, Jebara has since ceased communication with Mr. Sulieman.

49. To establish a breach of contract claim in New York, a party must show: (1) that an agreement existed between the plaintiff and defendant; (2) what the respective obligations of the parties were; (3) that the plaintiff performed its obligation under the agreement; (4) that the defendant breached the agreement by failing to perform its obligations, and (5) that the plaintiff suffered damages as a result of the breach. *Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 807 F. Supp. 337, 341 (S.D.N.Y. 1992).

50. An agreement existed between the parties because Plaintiff contracted with Defendants for a defined benefit.

51. The Agreement between the parties consisted of valid consideration.

52. Both parties were obligated to perform their respective duties defined in the agreement.

53. Plaintiff fully performed his obligations under the contract, as he loaned the money to Defendant Jebara

54. The Defendants failure to pay pursuant to the terms of the agreement, constitutes a material breach of contract.

55. It is upon information and belief, Defendant, Jebara willfully breached, and Mr. Sulieman suffered actual harm, as inter alia it has caused him substantial interest costs as it pertains to his business.

56. Under "New York law, an agreement is enforceable if a meeting of the minds has occurred as to the contract's material terms." *Michael Coppel Promotions Pty. Ltd. v. Bolton*, 982 F. Supp. 950, 954 (S.D.N.Y. 1997) (quotations and footnote omitted).

57. Plaintiff and Defendant, Jebara have an enforceable agreement because prior to advancing the loan, both parties agreed to the material terms of the contract. Moreover, the Agreement was ratified when Defendant Jebara continued to make written-fraudulent warranties regarding the loan to Mr. Sulieman.

58. The consideration to be paid under a contract is a material term. *GEM Advisors, Inc. v. Corporocaion Sidneor, S.A.*, 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009); *accord Major League Baseball Props., Inc. v. Opening Day Prod., Inc.,* 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005).

59. Plaintiff and Defendant, Jebara at the time of agreement manifested their intent to be bound because the terms were sufficiently definite.

60. Furthermore, Plaintiff and Defendant, Jebara's agreement clearly indicates terms could be found within the agreement or ascertained by reference to an extrinsic event, commercial practice, or trade usage.

61. Defendant, Jebara was contractually, statutorily, and legally obligated to avoid self-dealing, duty of good faith, and not place the Defendant's own interest above Plaintiffs.

62. The agreement between Plaintiff and Defendants has an implied covenant of fair dealing and good faith, which Defendant, Jebara breached.

## COUNT IV
*Against All Defendants*
*(Unjust Enrichment)*

63. Paragraphs 1 to 62 are incorporated as if fully set forth herein. Plaintiffs repeats and re-alleges the allegations of the complaint as if set forth in full herein.

64. Defendants have been unjustly enriched by fraudulently inducing Plaintiff into financing a Loan whereby, Defendants never had the wherewithal to produce as promised.

65. Defendants are liable to Plaintiff in the amount of the Loan granted in cash August 30, 2020 and other appropriate damages as Mr. Suileman has sustained real and justifiable damages in his business.

66. Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience required restitution." *Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

67. Mr. Suliman can prevail under a claim for unjust enrichment because Defendants were unjustly

enriched because they benefited from Plaintiff's as Defendants' utilized Mr. Sulieman's money for their own benefit, without regard to Mr. Sulieman wishes.

68. If Sulieman would not have been fraudulently induced into entering into the Loan, he would not have advanced Defendants the Loan.

69. Mr. Sulieman was injured at Defendant's expense.

70. Defendants prospered at the Mr. Sulieman's expense.

71. Mr. Sulieman can prevail under a claim for unjust enrichment because equity and conscience require restitution and repayment of the Loan.

72. Defendants were unjustly enriched because they received the benefit of Mr. Sulieman monies therefore, it is against equity and good conscience to permit Defendants to retain the monies sought to be recovered by Mr. Sulieman

## COUNT FOUR
### Conversion
(*Against all Defendants*)

73. Plaintiffs individually repeats, and realleges each and every allegation contained in paragraphs 1 to 72 with the same force and effect as if more fully set forth herein.

74. Defendants are liable for conversion of the Mr. Sulieman's money.

75. Mr. Sulieman's monies is currently and wrongfully in the exclusive control of the Defendants as Defendants procured Mr. Sulieman's monies by way of fraudulent conduct.

76. Wherein Defendants converted monies not lawfully paid to Defendants for their own personal gain, and not for a bilateral benefit.

77. Defendants utilized the monies fraudulently procured for their own personal benefit, and not for the intended purpose.

78. Defendants utilized the fraudulently procured monies for their own gain, with no intention of

actually fulfilling their end of the contract (which they knew they could never possibly do); solely for his own gratitude.

79. Mr. Sulieman maintains a clear possessory interest in, and the right to possession of its property; specifically, the $290,000.  At all times relevant Plaintiffs' property has been specifically identifiable because all of the Plaintiffs; money is recorded and documented.

80. At all times relevant, Defendant has been under the obligation to return Mr. Sulieman's money.

81. The Defendants, absconded with Mr. Sulieman's monies, which they procured via fraudulent conduct, which constitutes the tort of conversion.

82. Defendants, contrived to find a way to preserve the monies fraudulently procured from Sulieman, via a fraudulent inducement.

83. Defendant interfered with Sulieman' possessory interests and rights by intentionally refusing to honor its contractual obligations, which were precured via fraud.

84. At all times relevant, Defendant's actions are inconsistent with Defendants obligations to Mr. Sulieman's pursuant to the fraudulently procured agreement, and plainly interfere with Mr. Sulieman's possession and dominion over its monies.

## COUNT V
### *accounting*

85. Plaintiffs individually repeats, and realleges each and every allegation contained in paragraphs 1 to 84 with the same force and effect as if more fully set forth herein.

*86.* The activities of Defendants, including but not limited to Defendants, as alleged above entitle Mr. Sulieman to an equitable accounting by Defendants to Mr. Sulieman for all of the monies

taken, utilized, spent in furtherance of the Defendants fraudulent practice.

**WHEREFORE**, Mr. Sulieman prays that this Court enter judgment in its favor of on the above Count and against Defendants; awarding compensation damages in the amount of $290,000.00; compounded by the daily interest rate of 9%; consequential damages in an amount to be determined at trial; along with cost of this action; attorney's fees and other relief the Court deems proper.

Dated; December 10, 2020

                                                      Respectfully Submitted,

                                                      **J. Iandolo Law. PC**

                                                      *Jeremy M. Iandolo*
                                                      Jeremy M. Iandolo, Esq.
                                                      7621 13th Avenue
                                                      Brooklyn, New York 11228
                                                      (718)305.1702