UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

AMER SULIEMAN,

    Plaintiff,

vs.

JEBARA IGBARA, JOUMANA DANOUN, AND MOTASEM KHALIL

    Defendants

1:20-cv-6032

# DEFENDANT MOTASEM KHALIL'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFF

Respectfully Submitted,
**ALEXANDER F. DUKE P.C.**

By: *Alexander F. Duke*
Alexander F. Duke AD1701
300 Cadman Plaza
12th Floor
Brooklyn, N.Y. 11201
914-552-7755
Alexander.Duke@DukeLawFirmPC.com
**Attorneys for Defendant Motasem Khalil**

This Memorandum of Law is made in support of Khalil's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in Reply to Plaintiff's Opposition.

Plaintiff's damages are solely due to the actions of Igbara, who defaulted in this case while sitting in jail. Plaintiff is attempting to shoehorn fraud claims against Khalil into what is a straightforward breach of contract case against Igbara.

## ARGUMENT

Point I
**Plaintiff Failed to Allege Facts Demonstrating That He Was Induced By Khalil Into Making The Loan to Igbara**

Plaintiff made a loan to Igbara, and he expected to be paid back. Breach of contract is clearly pled in the amended complaint at page 8.

However, this cause of action is not alleged against movant Khalil, only Igbara. Khalil was not a party to the loan contract, nor was he alleged to even be present when the loan cash was provided by Plaintiff. As such, the fraud inflicted on Plaintiff was complete even before Khalil was involved. This is apparent in the paragraphs of the amended complaint cited at pg. 5 by Plaintiff in opposition, which speak to Khalil's actions in "silencing" Plaintiff. None of the allegations refer to Plaintiff actually being defrauded by Khalil, in the making of the loan to Igbara, as the actions he is alleged to have taken in support of the fraud (the text messages and checks) all happened *after* the loan was made and was in default.

**The amended complaint alleges at ¶5 that the loan was made by Plaintiff on August 30, 2019. The amended complaint also alleges that the second check drafted by Khalil to**

**Plaintiff was made on September 25, 2020 and Plaintiff's text message to Khalil demanding his money was made on October 2, 2020, for the loan that was supposed to be paid back within 48 hours. ¶ 18-19, 46.** This recitation of the timeline as alleged by Plaintiff destroys any cause of action for fraud against Khalil, since he can not possibly be held to induce a fraud over a year **after** it was complete![1]

The alternative attenuated argument made by Plaintiff boils down to: Khalil participated in Instagram videos which bolstered Igbara's "persona", to the point where Plaintiff was compelled to give Igbara "a certain amount of cash" at 1:40 in the morning, without getting so much as a receipt. Am. Comp. ¶5.

This is pure, unadulterated speculation without any supporting documentation or allegations particularizing the inducement. What specific Instagram posts made by Khalil led Plaintiff to this decision? What words were spoken by Khalil in the clips? What was promised? None of the answers to these simple questions, which would be easy for Plaintiff to include in the original and certainly amended complaint, are provided. Instead, Plaintiff seeks to conflate the actions of Igbara, whose showboating on Instagram convinced Plaintiff to make the loan, with Khalil who was only involved after the loan was made. This intention is apparent in the first page of Plaintiff Counsel's opposition, which characterizes Khalil as having the same "modus operandi" as Igbara's totally unrelated criminal charges, yet fails to actually expand upon that accusation with any specific facts from the amended complaint.

Indeed, the amended complaint actually suggests the opposite, that Khalil's Instagram

---

[1] It should be noted these dates could have been corrected from the original complaint if they were in error, but they were not amended and hence must be taken as true. But even if the texts and checks were sent in October 2019, instead of 2020, that was *still* two months *after* the loan was made and 58 days after the loan was in default, since it was supposed to be paid back in 48 hours. Even under this timeline, nothing that Khalil is alleged to have done occurred until after the fraud was complete.

persona was only secondary to Plaintiff's motivations for making the loan. Plaintiff alleges that his business had an "investment contract" already with Igbara, which was presumably lucrative since it led to Igbara's decision to extend a loan to him. Am. Comp. ¶4. **The notion that Plaintiff, who already had a business history with Igbara, was fraudulently convinced by Khalil via Instagram videos (which he did not even appear in) to extend a large cash loan is absurd on its face.**

Plaintiff presented no authority which holds that showing off an extravagant lifestyle on social media, even if fake, can result in liability for fraud by the camera person, crew, and producers, likely because there are no precedents for such a proposition. This is because including the support staff for the medium by which the fraudster makes his sales pitch would dramatically expand the definition of "inducement" and with it the grasp of the cause of action for fraud.

Moreover, as Plaintiff's Memo of Law points out, "A Plaintiff may not rely solely on the existence of the alleged fraud...to support a claim of fraud." Pl. Memo of Law P. 7, L. 23. Yet, that is precisely what Plaintiff is doing, by asking this Court to hold that since Igbara exaggerated his wealth on social media and failed to pay back the loan, Khalil must therefore have committed fraud since he was allegedly the cameraman.

Point II

**Plaintiff Failed to Oppose The Specific Argument Made by Defendant That The Amended Complaint Fails To State a Claim Under New York Law**

Plaintiff did not address that branch of the motion arguing for dismissal based on a specific failure to state a claim under New York law with respect to fraud claims in the presence of a contract, meaning the motion should be granted.

Dismissing the cause of action for fraud against Igbara would necessarily dismiss the remaining causes of action against Khalil, because Khalil is not alleged to be a party to the contract. Only the claim for breach of contract is properly pled, which is confined to Igbara.

## Point III

### Plaintiff Has Not Stated A Claim Alleging Unjust Enrichment

As Plaintiff's Memo of Law correctly notes, "An unjust enrichment claim will lie only where there is no enforceable contract." Pl. Memo of Law P. 9, L.7-8. Here, there was a loan agreement that Plaintiff alleges to be valid and enforceable, foreclosing a cause of action for unjust enrichment. The fact that Khalil was not a party to the contract does not mean the contract with Igbara is not enforceable. Moreover, since Khalil was not alleged to have induced Plaintiff to make the loan, Khalil cannot be said to have benefited at the Plaintiff's expense, since he is not alleged to have accepted the loan proceeds from Plaintiff directly. Instead, it is alleged in a roundabout fashion that Khalil was "enriched" by Plaintiff via Igbara providing the loan money to Khalil. But, even if this were true, it does not translate into unjust enrichment, since Khalil's involvement was not alleged to have *increased* or otherwise affected the loan that was already made, but simply that Plaintiff made the loan to Igbara in the first place because of his Instagram clout, that Khalil helped promote. Even if true, that does not tend to show that Khalil actually received any of the loan monies, nor does it equate to a higher loan being made to Igbara than Plaintiff otherwise would have due to any actions of Khalil.

Point IV

**Plaintiff Fails to State A Claim for Conversion**

Plaintiff alleges he provided a cash loan to Igbara, who never paid him back, breaching their agreement. If the loan amount was repaid to Plaintiff, then he would be made whole. Yet, this simple reality is overlooked by Plaintiff in an attempt to salvage the cause of action for conversion, which "cannot be validly maintained where damages are merely being sought for breach of contract." Pl. Memo of Law, P. 19 L. 78-8 (quoted from 10 NY Jur Conversion, §27).

There are no damages or pecuniary loss detailed in the amended complaint beyond the principle loan amount, other than boilerplate.

Moreover, while Plaintiff's memo of law alleges that Khalil (referred to generally as the collective "defendants"), "utilized [Plaintiff's money] for their own personal benefit", no facts or details supporting that conclusion are made in the amended complaint. Pl. Memo of Law P. 9, L.16-17.

Further, as noted in the Plaintiff's memo of law, the money must be "specifically identifiable" in order to be the subject of a conversion action, yet there is no allegation that the exact currency which Plaintiff turned over to Igbara is now or was ever literally controlled by Khalil. Pl. Memo of Law P. 10, L.3-4.

Since the only damages alleged would be cured by repayment of the loan on its terms, and there is no allegation beyond the bald conclusion that Kahlil received or actually had dominion over the cash, Plaintiff failed to state a claim for conversion.

Point V

**The Text Messages Included In Opposition To The Motion Are Not Evidence of Fraud**

As an initial matter, the text messages at Exhibit 2 of Plaintiff's Opposition are mischaracterized and misquoted by the amended complaint, at paragraphs 19-20.

The amended complaint quotes Khalil as texting, "[he] leavin tonight to Maryland." However, the text at Exhibit 2 reveals Khalil actually texted, "no im leavin tonight to maryland [sic]." This message is impossible to read in context, since the question to which Khalil is responding when he says "no" is not included in the exhibit.

Turning to their content, the two texts presented by Plaintiff are ambiguous. Simply because Khalil referred to himself in the first person, does not mean that he intended to adopt and take responsibility for the loan, to the point of now being liable for fraud. It is obvious that people speak colloquially in text messages and the two presented here (out of the presumably greater universe of total messages available that were not provided to the court) cannot make up for the failure to allege details of the fraud as committed by Khalil that are not alleged in the amended complaint.

Even assuming *arguendo* that these two texts, standing alone, were intended to mislead and delay Plaintiff from filing a lawsuit regarding the loan that was already in default for over a year, it is impossible and unfair to then put Khalil in a 'legal time machine' by attributing to him the making of the loan (the single act of fraud and moment of loss) when Plaintiff's own allegations limit his specific involvement to over a year later. As there are no allegations that any other money was provided after the one single loan was made by Plaintiff to Igbara, there cannot be any other damages or losses attributable to Khalil's alleged effort to delay collection of the

loan. Given this, Plaintiff is only entitled to damages for breach of contract from Igbara, precluding a fraud claim against Khalil, as discussed above.

## Point VI

### The Checks Are Not Evidence of Fraud

Finally, with respect to the two checks included in Plaintiff's opposition, they only allege Khalil's acts *after* the fraud by Igbara was complete. These checks cannot have been reasonably relied upon by Plaintiff in his decision to make the loan in 2019 because they did not exist, as the checks are both dated 2020.

As such, the allegations surrounding the checks cannot be the basis for any cause of action alleging fraud related to Plaintiff's inducement to provide the loan. Since that single loan is the only monies at issue here, it cannot be said that the checks led to any other fraud, loss, or damage attributable to Khalil, save for perhaps bank fees, which are not alleged at all.

**WHEREFORE**, it is respectfully requested that the Court grant the motion and the relief requested, issuing an order and judgment dismissing the Amended Complaint as to MOTASEM KHALIL, with prejudice.

Respectfully Submitted,
**ALEXANDER F. DUKE P.C.**

By: *Alexander F. Duke*
Alexander F. Duke AD1701
300 Cadman Plaza
12th Floor
Brooklyn, N.Y. 11201
914-552-7755
Alexander.Duke@DukeLawFirmPC.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27