```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
AMER SULIEMAN,                                     :
                                                   :
                              Plaintiff,           :
                                                   :        REPORT AND
           -against-                               :        RECOMMENDATION
                                                   :
JEBARA IGBARA, MOTASHEM R. KHALIL, and             :        20-CV-6032 (DG)(MMH)
JOUMANA DANOUN,                                    :
                                                   :
                              Defendants.          :
                                                   :
------------------------------------------------------------------x
```

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Amer Sulieman ("Sulieman") brings this action against Defendants Jebara Igbara ("Igbara"), Motashem R. Khalil ("Khalil"), and Joumana Danoun ("Danoun") (collectively, "Defendants") asserting fraud, breach of contract, conversion, and unjust enrichment claims. Sulieman alleges that Igbara and Danoun defrauded him of $290,000 by requesting a cash loan they had no intention of repaying, and Khalil furthered the scheme by issuing fake checks and sending him misleading text messages. (*See generally* Am. Compl., ECF No. 13.) Before the Court is Khalil's motion to dismiss the four claims against him in the Amended Complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6): Count II (Fraud), Count IV (Unjust Enrichment), Count V (Conversion), and Count VI (Accounting).[1] He also seeks to dismiss Count II pursuant to Rule 9(b). The Honorable Diane Gujarati referred the Motion to me for a Report and Recommendation. For the reasons set forth below, I respectfully recommend denying the motion in part and granting in part, with leave to replead.

---

[1] In the Amended Complaint, the conversion claim is mislabeled as "Count Four" and the accounting claim is mislabeled as "Count V." (Am. Compl., ECF No. 13 at 10–11.) I renumber them as Count V and Count VI, respectively. Additionally, citations to page numbers refer to the ECF pagination of the documents.

I.  **BACKGROUND**

   A.  **Factual Background**

The following asserted facts are taken from the Amended Complaint and are accepted as true for the purposes of this Motion. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

Sulieman and Igbara[2] are family friends who invested in businesses together. (Am. Compl., ECF No. 13 ¶¶ 2, 4.) Igbara used social media accounts to depict himself as a successful entrepreneur living a luxurious lifestyle—for example, driving expensive cars, wearing watches, hobnobbing with celebrities, and giving away cash and expensive items. (*Id.* ¶¶ 1, 16.) Igbara often got funds from his family, Sulieman, close friends, and the general public to fund this lifestyle. (*Id.* ¶ 2.) Danoun, Igbara's wife, assisted Igbara with his use of social media enterprises to promote his business interests. (*Id.* ¶ 3.) Khalil[3] was one of Igbara's business associates. (*Id.* ¶ 15.)

Sometime before August 30, 2019, Sulieman, through one of his business entities, entered into an investment contract ("the Investment") with Igbara in which Igbara promised "a certain rate of return" over a "prescribed one-year period." (*Id.* ¶ 4.) After the Investment, Igbara requested additional funds from Sulieman, even though Igbara had not paid Sulieman pursuant to the Investment. (*Id.*) The circumstances of that transaction form the basis of the instant lawsuit. (*Id.*)

---

[2] Igbara is referred to as "Jebara," "jaymancini," and "Jabara" in the Amended Complaint. (Am. Compl., ECF No. 13 *passim*.)
[3] Khalil is referred to as "Motashem R. Kahill," "Motashem R. Khalil," "Motasem R. Kahill," "Kahill," and "Khalil." (Am. Compl., ECF No. 13 *passim*.) A check that Khalil purportedly wrote to Sulieman refers to him as "Motasem R[.] Khalil." (Pl.'s Mem. in Opp'n. Ex. 3, ECF No. 18-4 at 2.)

Specifically, on or about the evening of August 29, 2019, Igbara and Danoun contacted Sulieman requesting cash. (*Id.* ¶ 5.) At 1:40 a.m. on August 30, 2019, Igbara and Danoun met Sulieman at his home. (*Id.*) Igbara told Sulieman he needed money immediately to pay for a real estate transaction, and that while he had sufficient assets to pay for the transaction, he could not access them for a few days. (*Id.* ¶¶ 6–7.) Based on their families' relationship and Igbara's depiction of his lavish lifestyle on social media, Sulieman agreed to lend Igbara $290,000 in cash ("the Loan"). (*Id.* ¶¶ 2, 6.) Igbara promised to pay Sulieman back within 48 hours. (*Id.* ¶¶ 38, 46.) At some point (it's unclear when), Igbara gave Sulieman three checks in the amounts of $240,000, $128,500, and $15,000, respectively, ostensibly to repay Sulieman for past monies owed[4] and for the Loan, and said that the checks could be "immediately deposited." (*Id.* ¶¶ 8–9.)

According to Sulieman, Igbara never intended to pay the Loan. For example, the next morning, Plaintiff attempted to cash the checks, but only the $15,000 check cleared. (*Id.* ¶ 9.) Immediately after the deposit, Igbara contacted Sulieman and asked why Sulieman "moved so quickly."[5] (*Id.* ¶ 9.) The next day, Igbara drove past Sulieman's place of business with a "convoy" of luxury vehicles driven by bodyguards, which Sulieman believed was meant to intimidate him. (*Id.* ¶¶ 10–11.)

A few days after Sulieman attempted to deposit the checks, he received insufficient fund notices for the checks. (*Id.* ¶ 12.) Sulieman contacted Igbara, who told him that he would draft new checks when he had the money. (*Id.*) Igbara assured Sulieman that he would repay Sulieman and sent Sulieman screenshots of monies (nearly $500,000) in an account to which Igbara had

---

[4] It is unclear whether the checks represented payment for the Investment or some other transaction.
[5] Presumably, Igbara was asking why Plaintiff "moved quickly" to deposit the checks.

access. (*Id.* ¶ 13.) On "September 11,"[6] Igbara sent a text message to Sulieman stating that a wire was sent to Sulieman, but Sulieman never received any money via wire. (*Id.* ¶ 14.)

Subsequently, Khalil participated in the fraudulent scheme in three ways. First, Khalil wrote two checks to Sulieman at Igbara's behest: (1) a check for $250,000, for which Khalil immediately obtained a stop payment order and (2) on September 25, 2020, a check for $118,500 that was returned for insufficient funds. (*Id.* ¶¶ 15, 18.)[7] Second, Khalil gave Igbara access to Khalil's account to reassure Sulieman that the money was available to cover the checks and to prevent Plaintiff from contacting law enforcement or filing suit to obtain his money. (*Id.* ¶¶ 16–17.) Third, Khalil sent text messages in which he "attempted to push Sulieman off." For example, on October 2, 2020, Sulieman sent a text message[8] to Khalil to notify him about the returned check, stating:

> Yo wats going on wit my money bro ya think this is a game ya gave me checks and ya stopped one and now I don't got my bread stop thinking this is a game ya don't know how bad this is.

(*Id.* ¶ 19.) When Khalil responded to Sulieman's text messages, he only attempted to push Sulieman off to a later date—for example, at least once telling Sulieman that he was leaving town. (*Id.* ¶¶ 19–20.)

---

[6] Sulieman alleges that the text was sent on "September 11" but does not include a year. (*Id.* ¶ 14.)

[7] Sulieman does not include the date of the $250,000 check in the Amended Complaint. But in his opposition papers, he submits copies of two checks: (1) a check dated September 25, 2020 from Khalil to "A Class Auto Sales" for $250,000 and (2) a check dated September 25, 2020 from Khalil to "A Class Auto Sales" with the number "$118,500," but the written amount "one hundred eighty thousand five hundred dollars." (Pl.'s Mem. in Opp. Ex. 3, ECF 18-4 at 2.) The Court may consider these materials as incorporated by reference into the Amended Complaint. *See Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) (allowing copies of text messages submitted as part of Rule 12(b)(6) briefing to be considered when the texts were quoted within the complaint).

[8] The text messages are quoted verbatim without spelling or grammar corrections.

Sulieman has never been repaid for the loan except for the $15,000 check he was able to cash. (*Id.* ¶¶ 54, 57.) Sulieman believes that Khalil's actions are similar to Igbara's in that Khalil used his fame to defraud others. (*Id.* ¶ 21.)

### B. Procedural History

Sulieman filed the Complaint on December 10, 2020, alleging fraudulent inducement against Igbara and Danoun (Count I), breach of contract against Igbara (Count III), and the remaining claims against all Defendants: fraud (Count II), unjust enrichment (Count IV), conversion (Count V), and accounting (Count VI). (Compl., ECF No. 1.) Khalil, the only defendant to appear in this case,[9] requested a pre-motion conference for an anticipated motion to dismiss the Complaint. (Def.'s Ltr. Mot., ECF No. 8.) Judge Gujarati granted Sulieman leave to amend. (Mar. 31, 2021 Minute Entry.)

Sulieman filed the Amended Complaint on April 6, 2021, but it remained largely unchanged from the Complaint. Defendant again moved to dismiss and was granted permission to file the instant motion. (Def.'s 2d Ltr. Mot., ECF No. 14; May 11, 2021 Order; Def.'s Mot., ECF No. 17.)[10] Judge Gujarati referred the motion to me for Report and Recommendation. (Oct. 8, 2021 Order.)

## II. STANDARD FOR MOTION FOR DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[9] Plaintiff requested certificates of default against Igbara and Danoun on April 6, 2021. (ECF No. 12.)
[10] I was assigned to the case on June 21, 2021.

5

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A complaint need not contain "'detailed factual allegations,' but it must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  While considering the motion, the court will "accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief."  *Galper v. JP Morgan Chase Bank*, *N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).  In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint.  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (citation omitted).

Rule 9(b) imposes a heightened pleading standard for fraud allegations, which must be "pled with particularity."  *Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020).  A plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014).  "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  *Wells v. U.S. Bank Nat'l Ass'n as Tr. for NRZ Pass-Through Tr. VIII*, No. 19-CV-4605 (MKB), 2020 WL 9816021, at *2 (E.D.N.Y. May 21, 2020) (internal quotations and citations omitted).

Despite Rule 9(b)'s particularity requirement, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (quoting Fed. R. Civ. P. 9(b)).  A plaintiff must plead facts "that give rise to a strong inference of fraudulent intent."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo*

6

*Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).  That inference can be demonstrated "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *ACR Sys., Inc. v. Woori Bank*, No. 14-CIV-2817 (JFK), 2018 WL 1757019, at *4 (S.D.N.Y. Apr. 10, 2018) (quoting *Lerner*, 459 F.3d at 290–91).

"'Plaintiffs whose complaints are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint.'" *Est. of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 197 (D. Conn. 2007) (quoting *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 276 (2d Cir.1998); *United Merchandise Wholesale, Inc., v. IFFCO, Inc.*, 51 F. Supp. 3d 249, 265–66 (E.D.N.Y. 2014) (granting leave to replead particularized facts omitted from the complaint); *but see Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 348 (E.D.N.Y. 2014) ("[G]iven that the Plaintiffs attempted to cure any defects in their initial complaint with respect to these claims but have still failed to state a claim for relief, the Court declines to afford the Plaintiff an opportunity to replead these claims.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III.  DISCUSSION

Khalil moves to dismiss the four counts against him for failure to state a claim: Fraud (Count II), Unjust Enrichment (Count IV), Conversion (Count V), and Accounting (Count VI). He also seeks dismissal of the fraud allegations in Count II for failure to meet Rule 9(b)'s heightened pleading standard.

### A. Fraud (Count II)

#### 1. The Fraud Claim Against Khalil Is Independent of the Breach of Contract Claim Against Igbara

Khalil argues that the Court should dismiss the Amended Complaint because the allegations all relate to a breach of contract—*i.e.*, the Loan and Igbara's failure to repay the Loan. (Def.'s Mot., ECF No. 17-2 at 5–6.) In New York, claims for breach of contract and fraud can only be brought together "if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 102 (E.D.N.Y. 2021) (quoting *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007)).

As Khalil acknowledges, Sulieman does not (and could not) allege that he and Khalil entered into a contract and therefore did not name Khalil in Count I, which alleges breach of contract against Igbara and Danoun. (Def.'s Mot., ECF No. 17 at 4.) Instead, the Amended Complaint alleges that Khalil made fraudulent misrepresentations to Sulieman *after* Igbara's failure to pay the Loan, by writing Sulieman checks that could not be cashed and asserting in text messages "I got you," meaning that Khalil would issue new checks or otherwise pay Sulieman. (Am. Compl. ¶¶ 15–17, 19–20, 40–51.) Such allegations regarding Khalil's conduct cannot support the essential elements of a contract claim against Khalil under New York law. *See I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) ("Under New York law, the elements necessary to establish the existence of an enforceable agreement are: "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.") Because there are no allegations of a contract between Sulieman and Khalil, allegations of fraudulent conduct against Khalil are extraneous to the contract between Sulieman and Igbara.

8

Khalil relies on *Krantz v. Chateau Stores of Canada, Ltd.*, 256 A.D.2d 186 (1st Dep't 1998) for the proposition that fraud claims arising out of a breach of contract cannot survive. (Def.'s Mot., ECF No. 17-2 at 5.) However, *Krantz* is inapposite. There, the plaintiff alleged that the defendant breached its contract *with the plaintiff* by making false statements about the amount of money owed to the plaintiff under the contract, thereby committing fraud. 256 A.D.2d at 186–87. Here, Sulieman does not allege a contract with Khalil and his claims are based on Khalil's conduct after Igbara's alleged failure to repay the Loan, the contract Sulieman allegedly made with Igbara. (Am. Compl. ¶¶ 15–20.) Therefore, Sulieman's fraud allegations against Khalil are not duplicative of a breach of contract claim. Accordingly, I respectfully recommend denying the motion to dismiss on this ground.[11]

### 2.   Sulieman Fails to Allege Fraud against Khalil with Particularity

To assert fraud, Sulieman must plausibly allege: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Drawing all inferences in Sulieman's favor, the pleadings do not state with particularity each element of a fraud claim against Khalil. Accordingly, I respectfully recommend granting Khalil's motion to dismiss Count II without prejudice, and granting Sulieman leave to replead the deficient allegations as set forth below.

---

[11] Khalil similarly argues that Sulieman's unjust enrichment, conversion, and accounting claims cannot survive because, *inter alia*, they are based on the alleged breach of the terms of the Loan. (Def. Mot., ECF 17-2 at 9–11.) The Court also rejects this reasoning for substantially the same reasons as the fraud claim: *i.e.*, Sulieman does not allege that he formed a contract with Khalil.

*(a) Material Misrepresentations*

With respect to the first element, misrepresentations of material fact, the Amended Complaint alleges that Khalil: (1) wrote two checks that Sulieman was unable to cash (*id.* ¶¶ 15, 18); (2) stated in text messages that he would repay Sulieman (*id.* ¶¶ 19–20); and (3) allowed Igbara to access and rely on his bank account as proof of access to funds (*id.* ¶¶ 16–17). As to the first two categories, Sulieman alleges material misrepresentations regarding the checks and the text messages with particularity. *See IKB Int'l S.A.*, 594 F App'x at 27. According to the Amended Complaint, Khalil drafted the first check on September 25, 2020 in the amount of $250,000 but "immediately issued a stop payment order" on the check. (Am. Compl., ECF No. 13 ¶ 15; *see* Pl.'s Mem. in Opp., ECF No. 18-4 at 2.) Khalil also "drafted a second check, in the amount of $118,500, from a Wells Fargo Account on September 25, 2020, which was returned for insufficient funds." (Am. Compl., ECF No. 13 ¶ 18; Pl.'s Mem. in Opp., ECF No. 18-4 at 3.) The Amended Complaint further alleges that Sulieman complained to Khalil about the bad checks in at least one text message on October 2, 2020 and that Khalil stated that he was "leavin tonight to maryland" and "I got you when I come back" in other text messages, but has not paid him.[12] (Am. Compl. ¶¶ 19, 54, 57.) Considering these facts in the light most favorable to Sulieman, Sulieman plausibly alleges material representations. *See Galper*, 802 F.3d at 443; *Wells*, 2020 WL 9816021, at *2.

---

[12] Plaintiff's opposition papers attach multiple text messages Sulieman and Khalil exchanged between September 23, 2020 and October 2, 2020, as well as copies of the two checks Khalil wrote. (Pl.'s Mem. in Opp., Exs. 2 & 3, ECF Nos. 18-3 & 18-4.) As noted, the Court may consider these materials as documents upon which the Amended Complaint relies. *Subaru Distribs. Corp.*, 425 F.3d at 122. If Sulieman is allowed to replead, these messages and documentary evidence should be attached to the amended pleading, as they provide context for Khalil's allegedly false statements.

For the third category of false statements, Sulieman does not allege with any specificity Khalil's misrepresentations regarding allowing Igbara to access his account. *See Town of Islip v. Datre*, 245 F. Supp. 3d 397, 414 (E.D.N.Y. 2017) (holding that the complaint failed to meet the Rule 9(b) standing when it did "not identify any statements made by the arranger defendants that were fraudulent, much less the person who made those statements, the time they were made, or their content."). The Amended Complaint alleges that Khalil "granted Jabara [*i.e.*, Igbara] access to his account, in an effort to further Defendants' scheme[,]" (Am. Compl., ECF No. 13 ¶ 16), but does not offer any specifics about how or when Khalil granted access or what misrepresentations Khalil made about the account. I therefore respectfully recommend granting Sulieman leave to replead to address the deficiencies with respect to the allegations that Khalil permitted Igbara to access his account. *Loreley Fin.*, 797 F.3d at 171.

*(b) Knowledge and Intent to Defraud*

"At the pleading stage, under Rule 9(b), a fraud plaintiff may establish a strong inference of scienter, among other ways, by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Loreley Fin.*, 797 F.3d at 177 (internal citations omitted). With respect to Khalil's knowledge and intent to defraud, the Amended Complaint alleges that "Defendants knew at the time of drafting the checks that the monies was [sic] not in the account, and would not be at the time of presentment." (Am. Compl., ECF No. 13 ¶ 42.) "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Bruno v. Zimmer, Inc.*, No. 15-CV-6129 (LDW)(AKT), 2017 WL 8793242, at *7 (E.D.N.Y. Aug. 11, 2017), *report and recommendation adopted*, No. CV 15-CV-6129, 2018 WL 671234 (E.D.N.Y. Feb. 1, 2018) (citations omitted). On its face, these allegations do not state which defendant had knowledge and

11

whether "the checks" refers to the three checks that Igbara wrote (Am. Compl., ECF No. 13 ¶ 8) or the two checks that Khalil wrote (*id.* ¶¶ 15, 18). However, at this stage, the Court is required to "view the alleged facts in their totality, not in isolation." *Loreley Fin.*, 797 F.3d at 171. Sulieman's particularized allegations regarding Khalil's writing of the checks and text messages, combined with the allegation that "Defendants" knew the checks could not be honored, "constitute strong circumstantial evidence of [Khalil's] conscious misbehavior or recklessness," *ACR Sys.*, 2018 WL 1757019, at *4. As noted, Khalil requested a stop payment on one check and has never paid Sulieman, raising an inference that Khalil did not intend for Sulieman to obtain funds from the checks at the time he wrote them or to provide funds to Sulieman after sending him text messages.

Khalil argues that because he was not involved in Sulieman's decision to issue the Loan to Igbara, Sulieman cannot allege that he (Khalil) had actual knowledge of "the fraud." (Def.'s Mot., ECF No. 17-2 at 6–7.) This argument should be rejected because it conflates the fraud allegations against Khalil with the fraud allegations against Igbara. Khalil correctly states that "there is no . . . allegation that Khalil 'substantially assisted' in *the fraud* . . . [Khalil] is also not alleged to have had knowledge of *the fraud* prior to its [sic] taking place, other than well past the time when the oral loan contract was breached . . . ." (Def. Mot., ECF No. 17-2 at 8 (emphasis added).) Khalil refers to "the fraud" as the circumstances under which Sulieman issued the Loan to Igbara in August 2019. In contrast, the allegations against Khalil suggest that he: (1) knew when he wrote the two checks in 2020 that Sulieman could not cash them, and (2) knew when he wrote text messages in 2020 to Sulieman that he (Khalil) was not going to write new checks or offer Sulieman any payments. (Am. Compl. ¶¶ 15, 18–20.) In other words, "the fraud" Sulieman alleges as to Khalil involves Khalil's conduct after Igbara's alleged breach of the Loan.

Accordingly, while Sulieman has alleged facts sufficient to raise an inference as to Khalil's scienter, I respectfully recommend that Sulieman be granted leave to amend the pleadings to specify the scope of Khalil's knowledge.

### (c) Reasonable Reliance

With respect to the fourth element, reasonable reliance, Sulieman must plead that he "did anything, or refrained from doing something, in reliance thereupon, to [his] detriment." *Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 138 (E.D.N.Y. 2017). The Amended Complaint alleges that Khalil wrote the first check "in an attempt to silence Plaintiff," that "Defendants knew that Plaintiff would rely on the representations [sic]," that "it was reasonable for Plaintiff to rely on Defendants [sic] misrepresentations" and that "Defendants, [sic] Kahill [sic] and Jabara's [*i.e.*, Igbara's] misrepresentation regarding Kahill's [sic] account balance was a calculated tactic to assure Plaintiff did not immediately seek judicial intervention." (Am. Compl., ECF No. 13 ¶¶ 15, 44, 49–50.) Accepting these facts as true, they plausibly allege that Sulieman reasonably relied on Khalil's statements and declined to pursue legal action to obtain his unpaid funds. *See ACR Sys., Inc.*, 2018 WL 1757019, at *4; *see also Stair v. Calhoun*, No. 07-CV-3906 (JFB)(ETB), 2009 WL 3259482, at *3 (E.D.N.Y. Oct. 8, 2009) ("[W]hether or not reliance was justifiable is typically a question of fact, and reliance has thus been pled adequately in this case to withstand a motion to dismiss.").

### (d) Injury

With respect to injury, Sulieman fails to plead with particularity how *Khalil's* conduct (not Igbara's) caused him harm. *See Spataro v. Glenwood Supply*, No. 10-CV-4792 (DLI), 2011 WL 13175928, at *3 (E.D.N.Y. Sept. 12, 2011) ("Ultimately, when the well-pleaded facts allow no more than an inference of a 'mere possibility of misconduct' and plaintiff has only alleged, rather

13

than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied.") (citing *Iqbal* 556 U.S. at 679). The Amended Complaint alleges that, "[a]t the time the Defendants procured the monies, Jebara [*i.e.*, Igbara], Kahill [sic] and Danoun, [sic] knew the monies loaned were for the purpose or renewing inventory in Mr. Sulieman's business, and without said monies, there would be substantial economic injury sustained, which there was," and that "Plaintiff was injured due to Defendants [sic] fraudulent conduct." (Am. Compl., ECF No. 13 ¶¶ 23, 51.) Unlike the scienter allegations above, which may be alleged more generally, *see Whiteside*, 995 F.3d at 323, the formulaic recitations of injury here do not describe Khalil's conduct with any particularity. As a result, Sulieman fails to plausibly allege injury as a result of Khalil's conduct.

Based on the foregoing, I respectfully recommend granting the motion to dismiss the fraud claim against Khalil in Count II of the Amended Complaint and granting Sulieman leave to replead consistent with the Court's order.

### B. Unjust Enrichment (Count IV)

An unjust enrichment claim is reserved for "unusual situations" when a defendant "has not breached a contract nor committed a recognized a tort," but when "circumstances create an equitable obligation running from the defendant to the plaintiff." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012)). To survive a motion to dismiss, a plaintiff must show: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Nelson v. MillerCoors, LLC*, 246 F. Supp.

3d 666, 679 (E.D.N.Y. 2017) (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).

Sulieman fails to state a claim for unjust enrichment. The Amended Complaint alleges that "Defendants have been unjustly enriched by fraudulently inducing Plaintiff into financing a Loan whereby, Defendants never had the wherewithal to produce as promised." (Am. Compl., ECF No. 13 ¶ 73.) The Amended Complaint also alleges that "Defendants were unjustly enriched because they benefitted from Plaintiff's [sic] as Defendants' [sic] utilized Mr. Sulieman's money for their own benefit, without regard to Mr. Sulieman [sic] wishes," that "Mr. Sulieman was injured at Defendant's [sic] expense," and "All Defendants prospered at the [sic] Mr. Sulieman's expense." (*Id.* ¶¶ 76, 78–79.) These conclusory averments do not specify how *Khalil* (as opposed to Igbara and Danoun) benefitted or how this enrichment was made at Sulieman's expense. In other words, these "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 556.

Accordingly, I respectfully recommend dismissing the claim of unjust enrichment against Khalil in Count IV of the Amended Complaint.

**C.  Conversion (Count V)**

"Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013) (citing *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006)). A plaintiff must allege: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's

15

right." *Bardwil Indus. Inc. v. Kennedy*, No-19-CIV-8211 (NRB), 2020 WL 2748248, at *4 (S.D.N.Y. May 27, 2020).

Sulieman's conversion claim fails because, assuming Sulieman's possessory right in the repayment of the money loaned to Igbara, the Amended Complaint does not allege *Khalil's* control over any funds belonging to Sulieman. The Amended Complaint alleges that "Defendants are liable for conversion of the [sic] Mr. Sulieman's money, as all Defendants including Kahill [sic], Jabara [*i.e.*, Igbara] and Danoun utilized Plaintiff's monies for something other than a real estate deal." (Am. Compl., ECF No. 13 ¶ 83.) The Amended Complaint also alleges that "Defendants utilized the monies fraudulently procured" and "Defendants, [sic] absconded with Mr. Sulieman's monies, which they procured via fraudulent conduct, which constitutes the tort of conversion." (*Id*. ¶¶ 87, 90.) These allegations are "naked assertions devoid of further factual enhancement." *3 W. 16th St., LLC v. Commonwealth Land Title Ins. Co.*, No. 18-CIV-1914 (AT)(HBP), 2019 WL 2453402, at *3 (S.D.N.Y. Feb. 21, 2019), *report and recommendation adopted*, No. 18-CIV-1914 (AT)(HBP), 2019 WL 1397135 (S.D.N.Y. Mar. 28, 2019) (quoting *Iqbal*, 556 U.S. at 678). Moreover, to the extent that the allegations sound in fraud, they do not meet Rule 9(b)'s heightened pleading standard. Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud[.]"); *see Town of Islip*, 245 F. Supp. 3d at 414. Therefore, I also respectfully recommend dismissing the claim of conversion against Khalil in Count V of the Amended Complaint.

### D. Accounting (Count VI)

To merit an equitable accounting under New York law, a plaintiff must show: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases,

a demand for an accounting and a refusal." *Rosa v. TCC Commc'ns, Inc.*, No. 15-CV-1665 (WHP), 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016).

The accounting claim against Khalil fails because Sulieman does not (and cannot) allege that Khalil acted as his fiduciary or that Khalil had a confidential (or any) relationship with him. *See Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 340 (E.D.N.Y. 2016) ("[T]here are no allegations in the [second amended complaint] which refer to circumstances suggesting the existence of a fiduciary or confidential relationship between [plaintiff] and [defendant]." Put another way, Sulieman fails to allege that he and Khalil shared a relationship "which induced plaintiff to entrust [him] with property or money[.]" *KJ Roberts & Co. Inc. v. MDC Partners Inc.*, No. 12-CIV-5779 (LGS), 2014 WL 1013828, at *12 (S.D.N.Y. Mar. 14, 2014).

In addition, as Khalil correctly notes, the Amended Complaint does not allege that "Khalil actually took, accepted or utilized any of Plaintiff's money." (Def.'s Mot., ECF No. 17-2 at 10.) Instead, the Amended Complaint alleges that "the activities of Defendants . . . entitle Mr. Sulieman to an equitable accounting by Defendants to Mr. Sulieman for all the monies taken, utilized, spent [sic] in furtherance of Defendants [sic] fraudulent practice." (Am. Compl., ECF No. 13 ¶ 95.) As with Khalil's other claims, these formulaic allegations of harm that do not distinguish Khalil's conduct from that of Igbara and Danoun, without more, are not sufficient. *3 W. 16th St., LLC*, 2019 WL 2453402, at *3. And while the Amended Complaint alleges that Khalil was "granted a substantial payment to further Jebara's [*i.e.*, Igbara's] scheme" so that "Defendants could live a luxurious lifestyle" (Am. Compl., ECF No. 13 ¶ 22), it does not allege that Sulieman's money was used to pay Khalil or was "entrusted to" Khalil.

17

For these reasons, I respectfully recommend dismissing the accounting claim against Khalil in Count VI of the Amended Complaint.

## IV.     **CONCLUSION**

For the reasons stated above, I respectfully recommend: (1) granting Khalil's motion to dismiss the fraud claim in Count II of the Amended Complaint; (2) granting Sulieman leave to file a Second Amended Complaint to cure the pleading deficiencies against Khalil as to Count II; and (3) granting Khalil's motion to dismiss the unjust enrichment, conversion, and accounting claims with prejudice.

Within 14 days, any party may serve and file objections to this report and recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED.**

Brooklyn, New York
March 31, 2022

 /s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge